## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE CAPORALETTI** | : | |
| **869 CYPRESS AVENUE** | : | |
| **SPRING CITY, PA 19475** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF POTTSTOWN** | : | |
| **100 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | |
| **CHIEF OF POLICE MICHAEL MARKOVICH** | : | |
| **POTTSTOWN POLICE DEPARTMENT** | : | |
| **100 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | **CIVIL ACTION** |
| **POLICE OFFICER PETER YAMBRICK** | : | |
| **POTTSTOWN POLICE DEPARTMENT** | : | **No.** |
| **100 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | |
| **POLICE OFFICER MATTHEW MACIEJEWSKI** | : | |
| **POTTSTOWN POLICE DEPARTMENT** | : | |
| **100 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | |
| **POLICE OFFICER JOHN DOES 1-99** | : | |
| **POTTSTOWN POLICE DEPARTMENT** | : | |
| **100 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | |
| **POTTSTOWN HOSPITAL** | : | |
| **1600 E. HIGH STREET** | : | |
| **POTTSTOWN, PA 19464** | : | |
| **and** | : | |
| **TOWER HEALTH** | : | |
| **420 S. FIFTH AVENUE** | : | |
| **WEST READING, PA 19611** | : | |
| **and** | : | |
| **ABC SECURITY COMPANY** | : | |
| **and** | : | |
| **DYLAN HECKART** | : | |

| | |
|---|---|
| **1600 E. HIGH STREET** | : |
| **POTTSTOWN, PA 19464** | : |
| **and** | : |
| **JANE DOE EMPLOYEE** | : |
| **POTTSOWN HOSPITAL** | : |
| **1600 E. HIGH STREET** | : |
| **POTTSTOWN, PA 19464** | : |
| **Defendants** | : |

## COMPLAINT

### I.      Introduction

1.    Plaintiff brings the action for damages pursuant 42 U.S.C. § 1983 and § 1988, the Fourth

and Fourteenth Amendments of the United States Constitution, as well as the statutory and

common laws of the Commonwealth of Pennsylvania, against Defendants, Chief Michael

Markovich, Police Officer Peter Yambrick, Officer Matthew Maciejewski, Police Officer

John Does 1-99, Dylan Heckart, and Jane Doe, in their individual and/or official capacities,

in addition to the Borough of Pottstown, Pottstown Hospital, Tower Health, and ABC

Security Company, as a result of police officers' unconstitutional use of excessive force

during the arrest of Plaintiff.

### II.      Jurisdiction and Venue

2.    The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C. §1331 and §1343

and jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367 and the principals of

pendant and ancillary jurisdiction.

3.    Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the complaint

is based arose in Pottstown, Pennsylvania, within Montgomery County, which is in the Eastern

District of Pennsylvania.

### III.   Parties

4.   Plaintiff, Christine Caporaletti, is an adult citizen of the Commonwealth of Pennsylvania residing as captioned.

5.   Defendant, Borough of Pottstown, is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania, with a main office/principal place of business located as captioned.

6.   Defendant, Chief Michael Markovitz was, at all relevant times, employed by Defendant Pottstown Borough and/or the Pottstown Police Department.

7.   Defendants, Police Officer Peter Yambrick, Officer Matthew Maciejewski, and Police Officer John Does 1-99, were at all relevant times police officers employed by the Borough of Pottstown and/or the Pottstown Police Department and are being sued in their individual capacities.

8.   Upon information and belief, at all relevant times hereto, one or more of the Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Arresting Officer John Doe, were acting in a supervisory capacity.

9.   At all relevant times, Defendants, Police Officer Peter Yambrick, Officer Matthew Maciejewski, and Police Officer John Does 1-99, were acting in the course and scope of their employment and under color of state law pursuant to the statutes, regulations, ordinances, rules, practices, policies, and customs of the Commonwealth of Pennsylvania and Defendants, Borough of Pottstown, Chief Michael Markovitz, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99.

10.   At all relevant times, Defendants, Borough of Pottstown, Chief Michael Markovitz, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, charged

with the responsibility of testing, hiring, training, supervising, and disciplining members of the Pottstown Police Department, including Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Officer John Does 1-99.

11.    At all relevant times, Defendants, Borough of Pottstown, Chief Michael Markovitz, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, acted or failed to act by and through its agents, servants, employees, workmen, and/or independent contractors then and there acting within the course and scope of their agency, servanthood, and employment and under color of state law.

12.    Defendant, Tower Health, is a business entity organized under the laws of the Commonwealth of Pennsylvania, with headquarters as captioned.

13.    Defendant, Pottstown Hospital, is a business entity organized under the laws of the Commonwealth of Pennsylvania, located as captioned.

14.    At all relevant times, Defendant Tower Health owned and operated Defendant Pottstown Hospital as a part of a healthcare provider and/or payer system.

15.    Defendant, ABC Security Company, is believed to be a business entity which provides security personnel as independent contractors to Defendants Pottstown Hospital and/or Tower Health.

16.    At all relevant times, Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company, acted or failed to act by and through its agents, servants, employees, security guards, and/or independent contractors then and there acting within the course and scope of their agency, servanthood, and employment and under color of state law.

17.    At all relevant times, Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company, were charged with the responsibility of testing, hiring, training, supervising

and/or disciplining its agents, servants, employees, security guards, and/or independent contractors at Pottstown Hospital, including Defendants Dylan Heckart and Jane Doe.

18.    Defendant, Dylan Heckart, is believed to be a citizen of the Commonwealth of Pennsylvania working for Pottstown Hospital, located as captioned.

19.    At all relevant times, Defendant, Dylan Heckart, was working as a security guard at Pottstown Hospital , Tower Health, and/or ABC Security Company, and is being sued in his individual capacity.

20.    Defendant, Jane Doe, is believed to be a citizen of the Commonwealth of Pennsylvania working for Pottstown Hospital, located as captioned.

21.    At all relevant times, Defendant, Jane Doe, was employed by Pottstown Hospital and/or Tower Health and is being sued in her individual capacity.

22.    At all relevant times, Defendants, Dylan Heckart and Jane Doe, acting in the course and scope of their employment and under color of state law pursuant to the statutes, regulations, ordinances, rules, practices, policies, and customs of the Commonwealth of Pennsylvania and Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company.

**IV.    Operative Facts**

23.    At all relevant times, Michael Graeff lived with Plaintiff, Christine Caporaletti, in her residence, and Plaintiff considered him to be "like a son."

24.    On Thursday, July 25, 2019, Mr. Graeff was overwhelmed by a mental health crisis.

25.    Concerned for his safety, at approximately 1322 hours[7], Plaintiff placed a phone call to 9-1-1 so that Mr. Graeff could receive a mental health evaluation.

_____

[7] All times are Eastern Daylight Time

26.   Sergeant Edward Ciacik of the Limerick Police Department was the first to respond and arrive at Plaintiff's home.

27.   Next, the paramedics arrived to take Mr. Graeff to Pottstown Hospital for an initial examination to determine if he should be admitted for involuntarily mental health treatment, as per Pennsylvania law and local laws/policies.

28.   Plaintiff and her daughter followed the ambulance to Pottstown Hospital.

29.   While at Pottstown Hospital, Plaintiff saw 360-degree security cameras, both outside of the Emergency Department entrance and inside the Emergency Department's waiting room.

30.   Upon arrival, Plaintiff approached Defendant Jane Doe at the front desk and asked for information pertaining to Mr. Graeff's well-being.

31.   Defendant Jane Doe informed Plaintiff that Mr. Graeff was not yet checked in.

32.   Plaintiff stressed the importance of seeing him as soon as possible.

33.   Defendant Jane Doe called the security guard for Pottstown Hospital, Defendant Dylan Heckart, after Plaintiff asked for information pertaining to the whereabouts and well-being of Mr. Graeff.

34.   Defendant Dylan Heckart approached Plaintiff and claimed, without any basis in fact, that Mr. Graeff did not want to see her and demanded that she leave the hospital.

35.   In violation of the laws of the Commonwealth of Pennsylvania, the local laws, and policies of Montgomery County, as well as procedures and policies set forth by Pottstown Hospital, Tower Health, Defendants, Dylan Heckart and Jane Doe, denied Plaintiff, a party involved in Mr. Graeff's care, of her rights to be informed of Mr. Graeff's whereabouts and status.

36.    In response to Defendant Dylan Heckart's demand that Plaintiff leave the hospital, Plaintiff insisted that she would not leave until she saw and spoke to Mr. Graeff.

37.    After this exchange, Plaintiff saw the ambulance containing Mr. Graeff arrive at the Pottstown Hospital Emergency Department via the hospital's video monitors.

38.    Plaintiff then knew Defendant Dylan Heckart lied to her about speaking with Mr. Graeff.

39.    Then, Plaintiff briefly went outside of the hospital to have a cigarette.

40.    As Plaintiff returned inside, Defendant Dylan Heckart approached her and falsely accused her of misconduct, asserting that she banged on the doors in the back of the emergency room and pushed through doctors.

41.    Plaintiff denied any wrongdoing and requested that Defendant Dylan Heckart show her the footage of this alleged misconduct, since the 360-degree security cameras would have captured her actual conduct, proving her innocence.

42.    Defendant Dylan Heckart replied that he was not obligated to show her any videos.

43.    As Plaintiff looked around in disbelief,  she noticed that the video monitor corresponding to the security camera was not even powered on.

44.    At some point during Plaintiff's encounter with Defendants Jane Doe and Dylan Heckart, either they or an unknown employee of Pottstown Hospital called the police.

45.    In response to the false allegations made by Defendant Dylan Heckart, Plaintiff called Limerick Police Department Sergeant Ciacik, the initial responder to her 9-1-1 call regarding Mr. Graeff's well-being and informed him of her encounter with that Defendant.

46.    During the phone call, Plaintiff and Sergeant Ciacik also discussed her rights as a party involved in Mr. Graeff's care.

47.   Contemporaneously, three (3) Pottstown Police, identified as Defendants Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, entered Pottstown Hospital's Emergency Department, and approached Plaintiff.

48.   Plaintiff remained on the phone with Sergeant Ciacik when Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, confronted Plaintiff.

49.   Plaintiff then put her phone on speaker so Sergeant Ciacik could identify himself and explain her situation to the aforementioned Defendants.

50.   Plaintiff informed Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, that she needed to remain at the hospital as an individual involved in the care of Mr. Graeff to make medical decisions, give relevant information to the doctors, and to receive updates about Mr. Graeff's well-being.

51.   Defendant Yambrick assured Plaintiff that he would check on Mr. Graeff.

52.   However, after a short time, one in which it would be mathematically improbable for Defendant Yambrick to have spoken to Mr. Graeff, Defendant Yambrick returned to where Plaintiff was waiting and told Plaintiff that Mr. Graeff did not want to see her, and that she had to leave the hospital.

53.   Based upon the circumstances, Plaintiff believes Defendant Yambrick never went to check with Mr. Graeff to see if he wished to see Plaintiff; instead, it is more likely Defendant Yambrick relied solely on the statements from Defendant Dylan Heckart, Defendant Jane Doe, and/or an unknown hospital employee regarding Mr. Graeff's desire to see or speak with Plaintiff, with whom he lived and was involved in his treatment.

54.     Plaintiff insisted, as was her right, that she would not leave the hospital unless Mr. Graeff himself told Plaintiff that he did not want to see her.

55.     Plaintiff left Pottstown Hospital after realizing Defendants, Jane Doe, Dylan Heckart, Officer Yambrick, Officer Maciejewski, and/or Arresting Officer John Doe, would not let her see Mr. Graeff.

56.     As Plaintiff exited the hospital when Defendants, Officer Yambrick, Officer Maciejewski, and Arresting Officer John Doe, followed her outside.

57.     Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, arrested Plaintiff, placing her in handcuffs outside of Pottstown Hospital, in front of Plaintiff's daughter.

58.     During the arrest, Plaintiff and her daughter begged Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, not to pull on Plaintiff's arm as she recently underwent arm surgery in April 2019, a mere three (3) months prior.

59.     Plaintiff already felt pain in her right wrist after Defendants, Officer Yambrick, Officer Maciejewski, and/or Arresting Officer John Doe, placed her in handcuffs.

60.     Then, Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Arresting Officer John Doe, with the knowledge of and deliberate indifference to Plaintiff's recent surgery, forced Plaintiff's restrained hands up toward her shoulder into an unnatural position which a person cannot hold on their own.

61.     As a direct and proximate result of the Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Arresting Officer John Doe, forcing Plaintiff's arm into this unnatural position, Plaintiff felt a tear in her arm, causing excruciating pain.

62.   Defendants, Officer Yambrick, Officer Maciejewski, and/or Arresting Officer John Doe, put Plaintiff in the police car.

63.   On the way to the Pottstown Police Department, Plaintiff cried in pain and pleaded with the aforementioned Defendants to loosen the handcuff on the right wrist.

64.   Defendants, Officer Yambrick, Officer Maciejewski, and/or Arresting Officer John Doe, ignored Plaintiff's cries for help to relieve the pain in her right arm.

65.   After transporting the Plaintiff to the Pottstown Police Department, an unknown police officer informed Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe, that the improperly handcuffed Plaintiff.

66.   Plaintiff was charged with a singular Summary Count of Disorderly Conduct[8].

67.   At all relevant times, Plaintiff was quite visibly under emotionally distress, but nonetheless cooperated with Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and Arresting Officer John Doe.

68.   At all relevant times, Defendants, Officer Yambrick, Officer Maciejewski, and Officer John Does 1-99, interacted with Plaintiff in a threatening, violent, and/or aggressive manner, causing Plaintiff to suffer physical pain, intense fear, and anxiety.

69.   By their aforementioned actions, Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Arresting Officer John Doe, violated Plaintiff's Fourth and Fourteenth Amendment Rights by using unreasonable and/or excessive force on Plaintiff during the course of the arrest.

70.   Defendants, Pottstown Borough, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, maintained a policy, practice, or custom of

---

[8] 18 Pa.C.S. § 5503(a)(1)

acquiescing to the unconstitutional conduct of Pottstown Police Department officers, including Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, including but not limited to the sorts of constitutional violations alleged in this complaint.

71. Defendants, Pottstown Borough, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, failed to adequately train Pottstown Police Officers, including Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, regarding requirements of the Fourth and Fourteenth Amendments.

72. Defendants, Pottstown Borough, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, failed to adequately discipline Pottstown Police Officers, including Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, for violating the Fourth and Fourteenth Amendments, and more specifically, for violating the Fourth and Fourteenth Amendments in the ways alleged in this Complaint.

73. As a direct and proximate result of the aforementioned acts and failures to act of Defendants, Plaintiff suffered fear, humiliation, anguish, and emotional distress and will continue to do so for an indefinite time, to her great detriment and loss.

74. As a direct and proximate result of the aforementioned acts and failures to act of Defendants, Plaintiff has incurred various expenses for medical treatment, which may continue for an indefinite period into the future, to her great detriment and loss.

75. As a direct and proximate result of the aforementioned acts and failures to act of Defendants, Plaintiff has incurred various other expenses, which may continue for an indefinite period into the future, to her great detriment and loss.

76. As a direct and proximate result of the aforementioned acts and failures to act of Defendants, Chief Michael Markovich, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, Plaintiff suffered from the following non-exhaustive list of harms:

    a. Violation of her clearly established and well-settled constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the use of unreasonable or excessive force;

    b. Full thickness tear of the rotator cuff involving the posterior fibers of the supraspinatus and anterior fibers of the infraspinatus;

    c. Moderate tendinopathy;

    d. Tendinopathy in the intra-articular portion of the biceps tendon;

    e. Bicipital tendinitis;

    f. Complete tear of right rotator cuff; and

    g. S/P arthroscopy of right shoulder.

**COUNT I**
**FEDERAL CONSTITUTIONAL CLAIM- EXCESSIVE FORCE**
**CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI, AND/OR**
**OFFICER JOHN DOES 1-99**

77. All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

78. Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, acting within the course and scope of their employment, under color of state law, and pursuant to the policies, practices, and customs of the Pottstown Police Department, Commonwealth of Pennsylvania, and Defendant Pottstown Borough,

deprived Plaintiff of her rights, privileges, and immunities under the United States Constitution.

79.     In particular, the aforementioned Defendants deprived Plaintiff of her right under the Fourth and Fourteenth Amendments to be free from unreasonable or excessive force.

80.     Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, in their individual capacities, were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

## COUNT II
## FEDERAL CONSTITUTIONAL CLAIM- SUPERVISOR LIABILITY
## CAPORALETTI v. CHIEF MARKOVICH, OFFICER YAMBRICK, OFFICER
## MACIEJEWSKI, AND/OR OFFICER JOHN DOES 1-99

81.     All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

82.     Defendants, Chief Michael Markovich, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Supervisory Officer John Does, were present on scene as Senior Members of the Pottstown Police Department.

83.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, were aware that officers under their supervision, including Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Supervisory Officer John Does, responded to a call from Pottstown Hospital regarding Plaintiff.

84.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, became aware that the police officers under their supervision, including Officer Peter Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to adequately respond to the situation regarding Pottstown Hospital.

85.    The aforementioned officers under the supervision of Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, violated the Plaintiff's constitutional rights by using unreasonable and/or excessive force while conducting an arrest arising from the officers' improper response to Pottstown Hospital's call.

86.    Plaintiff sustained injuries as a result of the improper response by the aforementioned officers under the supervision of Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, who failed to maintain, adopt, follow, and/or enforce appropriate policies, and/or train, supervise, and/or discipline police officers under their direction and control, to ensure that officers perform a full investigation when called to a scene, and/or that officers appropriately intervene and/or deescalate situations to which the police are called to.

87.    Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to maintain, adopt, follow, and/or enforce appropriate policies, procedures, practices, and/or customs to ensure that the officers under their supervision understand and respect the constitutional rights of citizens they encounter while on duty.

88.    Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to train, supervise, and/or discipline police officers under their direction and control, to ensure Pottstown police officers understand and respect the constitutional rights of citizens they encounter while on duty.

89.    Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to maintain, adopt, follow, and/or enforce appropriate policies procedures, practices, and/or customs to prevent the officers from using unconstitutional excessive force during arrests.

90.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to train, supervise, and/or discipline police officers under their direction and control to prevent the use of unconstitutional excessive force during arrests.

91.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to maintain, adopt, follow, and/or enforce appropriate policies, procedures, practices, and/or customs for police officers under their supervision to adequately respond to, investigate, intervene, and/or deescalate a situation to which the police are called.

92.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to train, supervise, and/or discipline police officers under their direction and control to adequately respond to, investigate, intervene, and/or deescalate a situation to which the police are called.

93.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, participated in violating and/or directed other members of the Pottstown Police Department to violate Plaintiff's constitutional rights.

94.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, knew or should have known that Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, violated/were violating Plaintiff's constitutional rights.

95.     Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, acquiesced in the above-described unconstitutional conduct of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99.

96.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, maliciously, intentionally, recklessly and/or with deliberate indifference failed to intervene and halt the unconstitutional conduct of any and all of the above-named Defendants, resulting in Plaintiff sustaining the injuries as set forth above.

97.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, should have maintained, adopted, enforced, and/or followed the existing and/or described trainings, supervision of police officers, disciplinary actions, policies, procedures, practices, and/or customs to prevent the occurrence of the above-described conduct which violated Plaintiff's constitutional rights.

98.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to train, supervise, and/or discipline officers of the Pottstown Police Department, leading to officers violating the constitutional rights of citizens, including the above-described conduct of Defendants, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, which resulted in Plaintiff sustaining injuries.

99.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to maintain, adopt, enforce, and/or follow the existing and/or described policies, procedures, practices, and/or customs, creating an unreasonable risk of the above-described conduct.

100.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, failed to train, supervise, and/or discipline officers of the Pottstown Police Department, creating an unreasonable risk of the above-described conduct.

101.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, were aware that this unreasonable risk existed.

102.   The aforementioned Defendants were deliberately indifferent to that risk.

103.   Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, with deliberate indifference to the consequences, established the above-described trainings, supervision, disciplinary actions, policies, procedures, practices, and/or customs which directly caused the conduct which violated Plaintiff's federal constitutional rights.

104.   The above-described conduct of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, which caused injury and violated Plaintiff's constitutional rights, resulted from the failure of Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, to maintain, adopt, enforce, and/or follow the existing and/or described trainings, supervision, disciplinary actions, policies, procedures, practices, and/or customs to prevent the unreasonable risk.

105.   The above-described actions of Defendants, Chief Markovich, Officer Yambrick, Officer Maciejewski, and/or Supervisory Officer John Does, as well as any and all of the above-named Defendants, in their individual capacity, were so malicious, intentional, and reckless and displayed such a deliberate indifference to Plaintiff's rights and well-being.

## COUNT III
## FEDERAL CONSTITUTIONAL CLAIM- BYSTANDER LIABILITY
## CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI, AND/OR OFFICER JOHN DOES 1-99

106.   All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

107.   Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, have a duty to prevent other Pottstown Police Officers from using unconstitutionally unreasonable and/or excessive force when conducting an arrest.

108.  Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, were present when the Plaintiff's constitutional rights were being violated.

109.  Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, knew or had reason to know that the Plaintiff's constitutional rights were being violated, and had a realistic opportunity to intervene and prevent the violation of those rights and the resulting harm from occurring,

110.  Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, failed to ensure that their Pottstown Police Department colleagues properly handcuffed Plaintiff in a way that would avoid causing injury or harm.

111.  Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, failed to correct improper handcuffing undeterred by Plaintiff begging for relief and telling them multiple times that the handcuffs were causing her significant pain.

112.  Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, failed to correct the improper  handcuffing even though they were cautioned by a fellow Pottstown Police officer  of its incorrect implementation.

113.  The above-described actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, in their individual capacity, were so malicious, intentional, and reckless and displayed such a deliberate indifference to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

## COUNT IV
## FEDERAL CONSTITUTIONAL CLAIM- CONSPIRACY
## CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI, AND/OR OFFICER JOHN DOES 1-99

114.  All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

115.    As demonstrated by their concerted conduct, Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, entered into an agreement or reached a meeting of the minds to use excessive force on Plaintiff by placing her arms and shoulders in an unnatural, painful position maliciously, intentionally, recklessly, or with deliberate indifference after Plaintiff and her daughter informed Defendants of her recent arm surgery, in violation of Plaintiff's rights to be free of unreasonable and/or excessive force.

116.    The above-described actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, were so malicious, intentional, reckless, and/or deliberately indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

### COUNT V
### COMMON LAW- ASSAULT AND BATTERY
### CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI, AND/OR OFFICER JOHN DOES 1-99

117.    All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

118.    The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, by improperly placing Plaintiff in handcuffs, resulting in excruciating pain and injury, was intentional, knowing, malicious, undertaken in bad faith, deliberately indifferent to, and/or in gross and reckless disregard of Plaintiff's rights.

119.    The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, by placing Plaintiff's arms and shoulders in an unnatural position causing excruciating pain despite both Plaintiff and her daughter's imploration that they be careful since Plaintiff was still recovering from her very recent arm surgery, was

intentional, knowing, malicious, undertaken in bad faith, deliberately indifferent to, and/or in gross and reckless disregard of Plaintiff's rights.

120. The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, constituted the torts of Assault and Battery under the laws of the Commonwealth of Pennsylvania.

121. Under the common law, Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, are liable for these actions.

**COUNT VI**
**COMMON LAW- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI,**
**AND/OROFFICER JOHN DOES 1-99**

122. All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

123. The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, by positioning Plaintiff's arms and shoulders in an unnatural, position causing excruciating pain despite both Plaintiff and her daughter's imploration that they be careful because Plaintiff was still recovering from her very recent arm surgery, were outrageous and extreme.

124. The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, by handcuffing Plaintiff incorrectly, causing her a great amount of physical pain, and ignoring her cries and pleas for the aforementioned Defendants to loosen Plaintiff's handcuff on her injured arm, were outrageous and extreme.

125. The above-described malicious, intentional, and reckless acts of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, were outrageous, atrocious, shock the conscience, and are completely intolerable in a civilized society.,.

126.    Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, acted maliciously, intentionally, and/or recklessly, and these aforementioned actions caused Plaintiff severe emotional distress.

127.    The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, constituted the tort of Intentional Infliction of Emotional Distress under the laws of the Commonwealth of Pennsylvania.

128.    Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, are liable for these actions.

**COUNT VII**
**COMMON LAW- NEGLIGENCE**
**CAPORALETTI v. OFFICER YAMBRICK, OFFICER MACIEJEWSKI,**
**AND/OR OFFICER JOHN DOES 1-99**

129.    All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

130.    Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, owed a duty of care to Plaintiff.

131.    The actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, as described above, violated that duty of care and were a direct and proximate cause of Plaintiff's injuries as described above.

132.    Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, violated that duty of care through the above-described actions, which were a substantial factor of Plaintiff's injuries.

133.    The aforementioned actions of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, constituted the tort of negligence under the laws of the Commonwealth of Pennsylvania.

134.   Under the common law of Pennsylvania, Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, are liable for these actions.

## COUNT VIII
## FEDERAL CONSTITUTIONAL CLAIM- JOINT PARTICIPATION
## CAPORALETTI v.  HECKART, JANE DOE, OFFICER YAMBRICK, OFFICER MACIEJEWSKI, AND/OR OFFICER JOHN DOES 1-99

135.    All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

136.   As aforesaid, Defendants, Dylan Heckart and Jane Doe, acting in joint participation with Defendants, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, gave their consent, authorization, cooperation, and/or agreement to the aforementioned Defendants, and facilitated the use of excessive force upon the Plaintiff at Pottstown Hospital.

137.    All Defendants knew that there was no consent, warrant, exigent circumstances, or probable cause that would allow Defendants, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, to lawfully arrest and subject Plaintiff to unreasonable and excessive force, but nonetheless took concerted acts in furtherance of that conspiracy, including, but not limited to, Defendants, Dylan Heckart and Jane Doe, facilitating the efforts of Defendants, Officer Yambrick, Officer Maciejewski, and/or Officer John Does 1-99, to lawfully arrest and subject Plaintiff to excessive force.

138.    As a direct and proximate result, Plaintiff was deprived of her right to be free from excessive force in violation of the Plaintiff's rights under the Fourth Amendment, as incorporated and applied to the States through the Fourteenth Amendment of the Constitution of the United States.

**COUNT IX**
**COMMON LAW- NEGLIGENCE**
**CAPORALETTI v. HECKART AND JANE DOE**

139.   All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

140.   The carelessness and negligence of one or both of Defendants, Dylan Heckart and Jane

Doe, in addition to that listed above, included, but was not limited to, the following:

   a.   Failure to know/understand/verify the patient privacy policies and procedures
        as set forth by Federal law, Pennsylvania law, Montgomery County
        law/ordinances, as well as polices set forth by Defendants, Tower Health,
        Pottstown Hospital, and/or ABC Security Company;

   b.   Failure to know/understand/verify who can receive information about an
        admitted patient according to the patient privacy policies and procedures as set
        forth by Federal law, Pennsylvania law, Montgomery County law/ordinances,
        as well as policies set forth by Defendants, Tower Health, Pottstown Hospital,
        and/or ABC Security Company;

   c.   Failure to know/understand/verify the circumstances where hospital staff is
        allowed/required to share information about an admitted patient according to
        the patient privacy policies and procedures as set forth by Federal law,
        Pennsylvania law, Montgomery County law/ordinances, as well as policies set
        forth by Defendants, Tower Health, Pottstown Hospital, and/or ABC Security
        Company;

   d.   Failure to know/understand/verify the policies and procedures for the
        examination prior to the involuntarily commitment of a patient as set forth by
        Federal law, Pennsylvania law, Montgomery County law/ordinances, as well as
        policies set forth by Defendants, Tower Health, Pottstown Hospital, and/or
        ABC Security Company;

   e.   Failure to know/understand/verify the policies and procedures for informing an
        interested party about the status of a patient who is being examined prior to
        involuntarily commitment as set forth by Federal law, Pennsylvania law,
        Montgomery County law/ordinances, as well as policies set forth by
        Defendants, Tower Health, Pottstown Hospital and/or ABC Security Company;

   f.   Failure to know/understand/verify who has the right to remain on hospital
        property as set forth by Federal law, Pennsylvania law, Montgomery County
        law/ordinances, as well as policies set forth by Defendants, Tower Health,
        Pottstown Hospital and/or ABC Security Company;

   g.   Failure to know/understand/verify the procedures and policies of when to
        contact law enforcement to remove an invitee of Pottstown Hospital as set forth

by Defendants, Tower Health, Pottstown Hospital and/or ABC Security Company; and

h. Negligence as a matter of law.

**COUNT X**
**COMMON LAW- RECKLESS ENDANGERMENT**
**CAPORALETTI v. HECKART AND JANE DOE**

141. All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

142. Defendants, Dylan Heckart and Jane Doe, recklessly placed or may have placed Plaintiff in danger of death or serious bodily injury when one or both of the aforementioned Defendants falsely accused Plaintiff of banging on the hospital doors, called Defendant Pottstown Police Department, and relayed this false accusation to the police.

143. Defendants, Dylan Heckart and Jane Doe, acted recklessly with respect to serious bodily injury when one or both of the aforementioned Defendants ignored a great an unjustifiable risk of calling the police and relaying this false accusation about Plaintiff in order to escalate the response of Defendants, Officer Peter Yambrick, Officer Matthew Maciejewski, and/or Officer John Does 1-99, which could cause another person to be injured.

144. The risk of injury to Plaintiff or another person by relaying a false accusation to the police to escalate their response was so serious that, considering what Defendants, Dylan Heckart and Jane Doe, did and what their intentions were, the actions of the aforementioned Defendants constituted in a gross deviation from the standard of care and/or conduct that a reasonable person in that situation would have followed.

**COUNT XI**
**COMMON LAW- NEGLIGENCE**
**CAPORALETTI v. POTTSTOWN HOSPITAL, TOWER HEALTH, AND/OR ABC**
**SECURITY COMPANY**

145. All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

146.    The carelessness and negligence of one or both of Defendants, Tower Health, Pottstown Hospital and/or ABC Security Company, in addition to that listed above, includes, but is not limited to, the following:

    a.  Negligent testing of its employees;

    b.  Failure to properly train, test and/or select the servants, agents, security guards, employees, and/ or independent contractors;

    c.  Failure to properly supervise, control and discipline the servants, agents, security guards, employees, and/or independent contractors;

    d.  Failure to prevent Plaintiff from being injured by the servant, agent, workman, employee, and/or independent contractor where Defendant knew or had reason to know of the dangerous propensities of said servant, agent, workman, employee, and/or independent contractor;

    e.  Otherwise acting without due regard for the rights, safety, and position of the plaintiff, in accordance with Defendants' own policies, the laws/ordinances of Montgomery County, laws of the Commonwealth of Pennsylvania, the Pennsylvania Constitution, federal law, and/or the United States Constitution;

    f.  Otherwise violating Defendants' own polices, laws/ordinances of Montgomery County, laws of the Commonwealth of Pennsylvania, the Pennsylvania Constitution, federal law, and/or the United States Constitution; and

    g.  Negligence as a matter of law.

**COUNT XII**
**COMMON LAW- VICARIOUS LIABILITY**
**CAPORALETTI v. POTTSTOWN HOSPITAL, TOWER HEALTH, AND/OR ABC SECURITY COMPANY**

147.    All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

148.    Defendants, Dylan Heckart and Jane Doe, were acting within the course and scope of their employment with Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company during their encounter with Plaintiff, committing the following:

    a.  Negligence as to a failure to know/understand/verify the policies and procedures as set forth by Federal law, Pennsylvania law, Montgomery County, as well as

Defendants, Tower Health, Pottstown Hospital, and/or ABC Security Company;

b.  Recklessly endangering Plaintiff; and

c.  Negligence as a matter of law.

149.  Defendants, Dylan Heckart and Jane Doe, committed those wrongful acts with a view of furthering the business and/or interests of their employers, Pottstown Hospital, Tower Health, and/or ABC Security Company, within their field of employment.

150.  As described above, Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company by and through its agents, employees, security guards, and/or independent contractors, caused the above-described harm against Plaintiff.

151.  Defendants, Pottstown Hospital, Tower Health, and/or ABC Security Company, are liable for the negligent conduct of its agents, servants, employees, security guards, and/or independent contractors.

## COUNT XIII
### *MONELL* CLAIM

152.  All preceding paragraphs are incorporated by reference as if more fully set-forth herein.

153.  Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Michael Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and custom of condoning and/or acquiescing to law enforcement officers failing to properly de-escalate an emergency situation, or a response to a complaint to the police department, and subjecting individuals to the same treatment suffered by Plaintiff. Said policy, custom, and practice violates the Fourth Amendment as applied to the States

through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

154.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and custom of systematically failing to properly train, investigate, supervise, and discipline police officers, including the individually named Defendants, regarding proper de-escalation of an emergency situation, or a response to a complaint to the police department, and subjecting individuals to the same treatment suffered by Plaintiff. Said policy, custom, and practice violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

155.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and/or custom of condoning and/or acquiescing to law enforcement officers using excessive force whilst conducting an arrest, systematically verbally and physically abusing individuals, and subjecting citizens to the same treatment suffered by Plaintiff. Said policy, custom, and/or practice violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

156.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to

Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and/or custom of systematically failing to properly train, investigate, supervise, and/or discipline police officers, including the individually named Defendants, regarding constitutional constraints on use of force whilst conducting an arrest, which policy, custom and/or practice violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of the Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

157.   Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and/or custom of systematically failing to properly train, investigate, supervise, and/or discipline police officers, including the individually named Defendants, in such a way as to reduce or restrain the members of the Pottstown Police Department from using excessive force whilst conducting arrest, and subjecting individuals to the same treatment suffered by Plaintiff. Said policy, custom, and practice violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States and of the Commonwealth of Pennsylvania.

158.   Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have been deliberately indifferent to the rights of citizens of Pottstown, Pennsylvania, to be free from police officers using excessive force, and said indifference violates Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

159.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief
Markovich, who exercised final decision-making authority in all areas relevant to
Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy,
practice, and/or custom of condoning and/or acquiescing to law enforcement officers'
failure to identify person with a statutory right to remain in a public area or private business,
and/or fully investigate a person's claims of this right, leading to an escalation of a
situation, and subjecting citizens to the same treatment suffered by Plaintiff. Said policy,
custom, and practice violates the Fourth Amendment as applied to the States through the
Fourteenth Amendment of Constitution of the United States, as well as the Laws of the
United States and of the Commonwealth of Pennsylvania.

160.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief
Markovich, who exercised final decision-making authority in all areas relevant to
Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy,
practice, and custom of systematically failing to properly train, investigate, supervise, and
discipline police officers, including the individual Defendants, in properly and fully
investigating claims of a person's statutory right to be in a public space /private business,
therefore subjecting citizens to the same treatment suffered by Plaintiff. Said policy,
custom, and practice violates the Fourth Amendment as applied to the States through the
Fourteenth Amendment of Constitution of the United States, as well as the Laws of the
United States and of the Commonwealth of Pennsylvania.

161.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief
Markovich, who exercised final decision-making authority in all areas relevant to
Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy,

practice, and custom of condoning and/or acquiescing to law enforcement officers failure to fully investigate claims or complaints made to the police department, instead allowing officers to use their own personal discretion without investigation to make a judgment or to conduct an arrest, and subjecting individuals to the same treatment suffered by Plaintiff. Said policy, custom, and practice violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, as well as the Laws of the United States and of the Commonwealth of Pennsylvania.

162.   Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and/or custom of systematically failing to properly train, investigate, supervise, and discipline police officers, including the individually named Defendants, to  properly and fully investigate calls/claims made to the Pottstown Police Department, instead allows officers to use their own personal discretion without investigation to make a judgment or to conduct an arrest, subjecting individuals to the same treatment suffered by Plaintiff, in violation of Plaintiff's and others' constitutional rights.

163.   Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and/or custom of systematically failing to fully investigate claims or complaints made to the police department regarding officers' conduct, including claims made by Plaintiff regarding the conduct of the individually named Defendants.

164.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, have adopted and maintained for years a recognized and accepted policy, practice, and custom of failing to properly investigate matters involving law enforcement officers using excessive force whilst conducting arrests, which allows and results in encouraging police officers to continue violating constitutional constraints.

165.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, was aware of the aforementioned policies, practices, and customs for a substantial period of time, and despite that knowledge, failed to take steps to terminate said practices, failed to properly supervise or discipline the individually named Defendants, failed to effectively train law enforcement officers with regard to the legal limits on their authority, and instead sanctioned, acquiesced, and/or were deliberately indifferent to the policies, practices, and customs that violated the constitutional rights of individuals such as Plaintiff.

166.    Plaintiff believes and therefore avers that Defendants, Pottstown Borough and/or Chief Markovich, who exercised final decision-making authority in all areas relevant to Plaintiff's claims, knew or should have known of the aforementioned policies, practices, and customs of the Pottstown Police Department and deliberately, intentionally, and knowingly failed to take steps to terminate or limit said policies, practices, and customs, including but not limited to:

      a.  Failure to train members of the Pottstown Police Department to deescalate a situation so that use of force against a civilian or civilians is not required;

b. Failure to have clear, concise, and appropriate guidance, including directives, to deescalate a situation which there is a reasonable expectation that, if escalated, members of the Pottstown Police Department would need to use force against citizens;

c. Failure to restrain the use of excessive force by members of the Pottstown Police Department whilst conducting an arrest;

d. Failure to have clear, concise, and appropriate guidance, including directives, regarding use of force whilst conducting an arrest;

e. Failure to properly supervise and/or control police officers whilst conducting an arrest;

f. Failure to provide proper counseling, use of force training, sensitivity training, psychological/psychiatric evaluation, or supervisory briefing/discussion with members of the Pottstown Police Department with complaints of excessive force;

g. Failure to discipline officers under the Pottstown Police Department's dominion and control who improperly escalate a situation or otherwise use unconstitutional excessive force whilst conducting an investigation or arrest;

h. Failure to have clear, concise, and appropriate guidance, including directives, to investigate complaints made to the police department fully;

i. Failure to supervise and/or control members of the Pottstown Police Department who respond to complaints made to the police department, allowing them to conduct arrests without reasonably investigating claims made by either party;

j. Failure to have clear, concise, and appropriate guidance, including directives , to reasonably investigate a person's claims of a statutory right to remain in a public place/private business;

k. Failure to have clear, concise, and appropriate guidance, including directives, to identify person(s) with a statutory right to remain in a public place/private business;

l. Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigations resulting in appropriate and documented corrective actions at all levels of the Pottstown Police Department;

m. Failure to prevent Plaintiff from being injured by members of Pottstown Police Department where Defendants knew or should have known of the dangerous

propensities of said members and the systemic problem of police abuses in the department;

n. Failure to have or maintain personnel training procedures necessary to prevent subjecting citizens to the same treatment suffered by Plaintiff; and

o. Otherwise acting without due regard for the rights, safety, and position of Plaintiff in accordance with her constitutional rights.

167. The Pottstown Police Department, including and specifically the individually named Defendants, have a history of escalating a situation they are called to respond to, leading the police officers to engage in rampant unlawful conduct during arrest and in use of excessive force. Other instances of misconduct include circumstances where the person placed under arrest tried to explain the situation, but officers of the Pottstown Police Department violated that person's constitutional rights instead of investigating the situation. Defendants, Pottstown Borough and/or Chief Markovich, adopted, maintained, recognized, accepted, knew of, should have known, acquiesced, and/or were deliberately indifferent to this type of conduct. Additionally, reports made to superior officers at the Pottstown Police Department were systematically and unconstitutionally ignored. This led to circumstances similar to the instant matter. A non-exhaustive list of constitutional violations committed by members of the Pottstown Police Department, and Defendants, Pottstown Borough and/or Chief Markovich, includes:

a. On March 8, 2018, Pottstown Police officers shot and killed a man, believed to be suicidal, whilst responding to a call asking for police to conduct a wellness check on that man.[9]

b. On November 23, 2013, Pottstown Police officers responded to a call from Shanicqua Suber-Aponte, to report a trespasser. Instead of fully investigating and deescalating the situation, police officers let the trespasser go and called Ms. Suber-Aponte racial slurs. On August 19, 2014, in a separate incident involving the same officer, Ms. Suber-Aponte's landlord called the police to

---

[9] Dan Stamm, *Officer Shoots, Kills Man Near Montgomery County Police Station*, NBC 1- Philadelphia (March 9, 2018, 1435 EST), https://www.nbcphiladelphia.com/news/local/pottstown-shooting-police/175925/

report that she would not let him enter. After the police officer arrived, Ms. Suber-Aponte and her landlord, together explained that the issue was amicably resolved. Nonetheless, the police officer escalated the already resolved situation, once again calling Ms. Suber-Aponte racial slurs, and telling her to shut up. The police officer demanded that she go inside and fabricated a police report alleging that Ms. Suber-Aponte caused a disturbance. This led to her losing her assistance from the housing authority. Indeed, when Ms. Suber-Aponte reported the August 19th interaction to the powers that be including then Chief of Pottstown Police Richard Drumheller, her complaints were ignored; and instead of assistance she was told to never call the Pottstown Police Department again.[5]

c. On or about June 24, 2007, a Pottstown police officer drove up to Jeffrey Taylor in her marked police vehicle and, through the vehicle's window, asked Mr. Taylor to stop. He refused to stop so the officer informed him that she was looking for a person, and Mr. Taylor fit the description. At that point, when Mr. Taylor attempted to flee, the officer pursued him in her vehicle. The officer then used excessive force, striking Mr. Taylor with her vehicle, which caused him to fall to the ground.[6]

d. On February 17, 2006, David Cooper went to a friend's house. There, a person offered Mr. Cooper a large quantity of cocaine to distribute, whereupon he immediately refused. Before Mr. Cooper was able to leave the house Pottstown Police Officers stormed through the front door with guns drawn. Police ordered Mr. Cooper and the house's resident to get on the ground; after Mr. Cooper "failed to comply" in a time and manner satisfactory to the police officers, one of the officers grabbed him by the neck, forcefully "slammed" him to the ground, placed a knee on his back so it was difficult for him to breathe, and handcuffed him. Because of Mr. Cooper's asthma and the unlawful manner in which the police officer exerted all his weight onto his back, Mr. Cooper was unable to breathe and could not speak to inform police of his medical condition. In an attempt to breathe and not die, Mr. Cooper attempted to shift when the police officer immediately punched him in his chest and torso twelve (12) times causing multiple rib fractures.[7]

e. On April 14, 1992, Elizabeth Boyer was driving home from a doctor's appointment when she was pulled over by Pottstown Police. She asked Ms. Boyer if she had left said doctor's office and told her that he would arrest her if she returned. Ms. Boyer replied she had not been told to leave and asked if the officer could go back with her so she could pick up her prescriptions. After arriving at the doctor's office, the policeman had a conversation with a nurse. Suddenly and without warning, the officer grabbed Ms. Boyer's arm to the point

---

[5] 2:15-cv-01314

[6] 2:07-cv-04883

[7] 2:08-cv-00346

of causing bruising and pulled her out of a chair in the waiting room. The officer forced Ms. Boyer out of the waiting room and used her body to shove open the door, further injuring her in the process. Outside, the policeman demanded that Ms. Boyer leave the premises. She asked for assistance to the hospital but was denied medical care and arrested instead. The police officer used excessive force during the unlawful arrest, slamming Ms. Boyer's body against the cop car and bruising her shoulder. The police officer then threatened to break Ms. Boyer's bones with his gun and knock out her teeth if she resisted the arrest. Once the officer arrived with Plaintiff at the Pottstown Police Department, he dragged her down the stairs to a holding cell.[8]

168.   Furthermore, the Pottstown Police Department, including and specifically the individually named Defendants, have a history of using their authority to unconstitutionally threaten citizens, engaging in rampant unlawful conduct during arrest, and using excessive force more generally. A non-exhaustive list of constitutional violations committed by members of the Pottstown Police Department, includes:

   a.   On March 1, 2017, Sekema Gentles was stopped by Pottstown Police who demanded that he show his identification. Mr. Gentles told the police officers he would not show them his identification unless they told him why he was being stopped, and they placed him under arrest. The officers then turned to Mr. Gentles' fiancé and asked for her identification, while threatening to arrest her and have her children placed in "Child Services." On March 25, 2017, Pottstown Police Department contacted Mr. Gentles, informing him that a Protection from Abuse Order was placed against him, and that an officer wanted to meet him to discuss the order. Mr. Gentles went to the Pottstown Police Department, and the officers showed him text messages that he had never seen before from a number that he did not use or own. After attempting to explain this to the officers, Mr. Gentles was wrongfully arrested by the Pottstown police officers, causing him to suffer irreparable harm and emotional distress.[9] [10]

   b.   On March 20, 2009, Chief Michael Markovich, then a Sergeant, a named Defendant in the instant case, obtained a warrant to search the second-floor apartment in a building. However, rather than verifying or properly investigating, he incorrectly assumed that the back door of the building would lead to a staircase, which would in turn lead to the second floor. Defendant Markovich and additional Pottstown police officers realized the back door did not lead to the second-floor apartment, and, despite the warrant specifically listing the second floor as the place to be searched, initiated a search of the first-

---

[8] 2:94-cv-01716
[9] 2:19-cv-00581
[10] 2:19-cv-01199

floor apartment where Leslie Harper, Alicia Doster, and Shuah Levi, were located. Defendant Markovich and Pottstown police officers proceeded to falsely imprisoned the inhabitants, forcing them to lie on the ground or sit in chairs, handcuffing them, and then strip-searching them. [11]

169.    The aforementioned policies, practices, customs, and/or deliberate indifference of the

Defendants, Pottstown Borough and Chief Michael Markovich, were the proximate cause

of the Plaintiff's injuries and losses and the violation of her constitutional rights.

**WHEREFORE**, Plaintiff, Christine Caporaletti, respectfully requests:

        a.  Compensatory and punitive damages as to all Defendants;

        b.  Reasonable attorney's fees and costs as to all Defendants; and

        c.  Such other relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial as to all claims asserted.


/s/ Alan E. Denenberg
Alan E. Denenberg
PA ID No. 54161
adenenberg@adlawfirm.com

Abramson and Denenberg, P.C.
1315 Walnut Street, Suite 500
Philadelphia, PA  19107
215.546.1345
*Counsel for Plaintiff*

Vazken A.E. Zerounian
PA ID No. 308846
vazken@adlawfirm.com

---

[11] 2:11-cv-01939