IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTINE CAPORALETTI,

    Plaintiff,

v.

BOROUGH OF POTTSTOWN, et al.,

    Defendants.

CIVIL ACTION
NO. 21-3293

**ORDER**

**AND NOW**, this 17th day of May 2022, upon consideration of Defendants Pottstown Hospital and Tower Health's Motion to Dismiss (Doc. No. 15), Plaintiff's Response in Opposition (Doc. No. 16), Defendants Pottstown Hospital and Tower Health's Reply (Doc. No. 17), it is **ORDERED** that Defendants Motion to Dismiss (Doc. No. 15) is **DENIED**.[1]

---

[1] Background

The following series of events is alleged in the Amended Complaint filed by Plaintiff Christine Caporaletti ("Plaintiff"). (Doc. No. 12.) On July 25, 2019, Michael Graeff ("Mr. Graeff") had a mental health crisis. (Doc. No. 12 ¶ 24.) Although Mr. Graeff is not Plaintiff's biological son, he lived with Plaintiff and she "considered him to be her son and refers to him as her son." (Id.) Because she was concerned about Mr. Graeff's well-being, Plaintiff called 911 so that he could receive a mental health evaluation. (Id. ¶ 28.) Shortly thereafter, a police officer and several paramedics arrived at Plaintiff's home to transport Mr. Graeff to Pottstown Hospital for an examination. (Id. ¶ 30.) While Mr. Graeff rode in the ambulance, Plaintiff and her daughter followed the ambulance to the hospital. (Id. ¶ 31.)

When Plaintiff arrived at Pottstown Hospital, she spoke to an employee at the front desk, Defendant Jane Doe ("Ms. Doe"). (Id. ¶ 33.) Ms. Doe is alleged to be an employee of Defendants Pottstown Hospital and/or Tower Health. (Id. ¶ 22–23.) After Plaintiff asked to see her son and asked for "information pertaining to his well-being," Ms. Doe told Plaintiff that Mr. Graeff had not yet checked in to the hospital. (Id. ¶¶ 33–34.) In response, Plaintiff "stressed the importance of seeing her son as soon as possible." (Id. ¶ 35.) Thereafter Ms. Doe called over Defendant Dylan Heckart ("Mr. Heckart"). (Id.) Mr. Heckart is alleged to be an employee or agent of Defendants, Pottstown Hospital and Tower Health, and/or Defendants ABC Security Company and Dothan Security Inc., d/b/a DSI Security Services. (Id. ¶ 18.) Defendant Heckart then informed Plaintiff that Mr. Graeff did not want to see her. (Id. ¶ 37.)

However, Plaintiff "knew [the statement of Mr. Heckart] was a lie," because at the time Defendant Heckart informed her of this declination, she saw Mr. Graeff on emergency room monitors just arriving and being wheeled into the hospital. (Id. ¶ 37.) When Plaintiff confronted Defendant Heckart by saying, "look me in the eyes and say that," he then asked her to leave the hospital. (Id. ¶ 39.) Plaintiff said that she would not leave until she saw Mr. Graeff. (Id. ¶ 46.)

After briefly having a cigarette outside the hospital, Plaintiff went inside. (Id. ¶ 48.) There, she was confronted by Defendant Heckart, who "falsely accused her of misconduct, asserting that she banged on the doors in the back of the emergency room and pushed through doctors." (Id. ¶ 49.) Plaintiff denied doing so and, because there were security cameras around the hospital, asked Defendant Heckart if he could show her the footage of the misconduct. (Id. ¶ 50.) In response, Defendant Heckart refused, and either or both Defendant Jane Doe and Defendant Heckart called the police and "falsely claimed that [] Plaintiff was banging on emergency room doors and was pushing through the doctors." (Id. ¶ 54.) Ultimately, three Pottstown Police Officers, Defendants Officers Peter Yambrick ("Officer Yambrick"), Matthew Maciejewski ("Officer Maciejewski"), and Officer John Doe arrived at the hospital and arrested Plaintiff for Disorderly Conduct. (Id. ¶¶ 67, 76.) During the arrest, Plaintiff asked the Defendant Officers not to pull on her arm, as she had undergone arm surgery three months prior. (Id. ¶ 68.) Nevertheless, the Officers did not follow this request and caused a tear in her arm by the alleged use of excessive force when putting her into handcuffs. (Id. ¶ 70–71.)

On October 15, 2021, Plaintiff filed an Amended Complaint. (Doc. No. 12.) The Amended Complaint asserts claims against Defendants Borough of Pottstown, Chief of Police Michael Markovich, Officer Yambrick, Officer Maciejewski, Officers John Does 1–99, Pottstown Hospital, Tower Health, ABC Security Company, Dothan Security Inc., d/b/a DSI Security Services, Mr. Heckart, and Ms. Doe. (See Doc. No. 12.) Only Count 11, alleging negligence, and Count 12, alleging vicarious liability, involve Defendants Pottstown Hospital and Tower Health ("Moving Defendants"). (See id. at 27–28.) Moving Defendants have filed the Motion to Dismiss now under consideration. (See Doc. No. 15.)

On October 29, 2021, Moving Defendants filed the Motion to Dismiss Counts 11 and 12, and Plaintiff's claim for Punitive Damages. (Doc. No. 15.) On November 10, 2021, Plaintiff filed a Response in Opposition. (Doc. No. 16.) On November 17, 2021, Moving Defendants filed a Reply. (Doc. No. 17.) On January 27, 2022, the Court held a hearing on the Motion with counsel for Plaintiff and Moving Defendants. The Motion to Dismiss is now fully briefed and ripe for disposition.

Standard of Review

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010) set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Defendants Pottstown Hospital and Tower Health's Motion to Dismiss will be denied.

In the Motion to Dismiss, Moving Defendants seek to dismiss Counts 11 and 12 for failure to state a claim. (Doc. No. 15-1 at 5.) Also, Moving Defendants ask the Court to dismiss Plaintiff's claim for punitive damages. (Id. at 8–9.) For reasons set forth below, Moving Defendants' Motion to Dismiss (Doc. No. 15) will be denied.

Claims for Negligence and Vicarious Liability

First, Moving Defendants seek to Dismiss Counts 11 and 12 for failure to state a claim. Count 11 alleges negligence and Count 12 alleges vicarious liability against Moving Defendants. (See Doc. No. 12 at 27–28.) In the Motion to Dismiss, Moving Defendants argue that Counts

11 and 12 should be dismissed for a single reason: lack of proximate cause. (See Doc. No. 15-1.)

Moving Defendants argue that Counts 11 and 12 should be dismissed because proximate causation has not been established between the actions of employees of Pottstown Hospital and Tower Health, such as calling 911 for the police to respond based on Plaintiff's conduct at the hospital, and the injuries sustained by Plaintiff during the arrest, the injured arm and more caused by the alleged excessive force of Defendant Officers of the Pottstown Police Department. (Doc. No. 15-1 at 8.) In her Response, Plaintiff indicates that Moving Defendants were a substantial factor in bringing about her injuries by "[lying] to the police about the Plaintiff's conduct." (Doc. No. 16 at 10.) Because of their conduct, Plaintiff asserts that it was foreseeable that Plaintiff would be injured by the police. (Id. at 11.) Also, Plaintiff notes that whether an event is foreseeable for purposes of Counts 11 and 12 is a question for the jury to decide. (Id.) Thus, Plaintiff maintains that proximate causation is well-pled in the Amended Complaint. (See id.)

To state a claim of negligence, a plaintiff must assert the following elements: (1) a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) the defendant's failure to conform to that standard, or a breach of its duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff. Jones v. Plumer, 226 A.3d 1037, 1039 (Pa. Super. 2020) (quoting Brewington for Brewington v. City of Philadelphia, 199 A.3d 348, 355 (Pa. 2018)). "To prove negligence, a plaintiff may proceed against a defendant on theories of direct and vicarious liability, asserted either concomitantly or alternately." Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 597 (Pa. 2012).

To show vicarious liability, "[i]f a particular agent is not a servant, the principal is not considered a master who may be held vicariously liable." Valles v. Alert Einstein Med. Ctr., 758 A.2d 1238, 1244 (Pa. Super. Ct. 2000). "As a general rule, a master may be held liable for the acts of the servant when those acts are committed during the course of his employment and within the scope of his authority." I.H. ex rel. Litz v. County of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010) (quotation and citation omitted).

In the Amended Complaint, Count 11 alleges negligence under Pennsylvania law against Pottstown Hospital and Tower Health for, inter alia, their failure to test and train employees and security guards and their failure to properly supervise their employees and security guards. (Doc. No. 12 ¶ 156.) By contrast, Count 12 alleges vicarious liability by Moving Defendants for, inter alia, the individual, negligent actions of Defendants' employees, agents, and security guards. (Id. ¶ 158.) Although both are claims of negligence, they may be brought as separate causes of action under Pennsylvania law. See Simmons v. Simpson House, Inc., 224 F. Supp. 3d 406, 413 (E.D. Pa. 2016).

For their request to dismiss Counts 11 and 12, Moving Defendants only argue that the third element of negligence, causation, is not met. (Doc. No. 15-1 at 5–8.) To demonstrate causation, a plaintiff must show both but-for and proximate causation. Reott v. Asia Trend,

Inc., 55 A.3d 1088, 1103 (Pa. 2012).  The two types of causation are characterized under Pennsylvania law as follows:

> Cause in fact or 'but for' causation provides that if the harmful result would not have come about but for the negligent conduct then there is a direct causal connection between the negligence and the injury.  Legal or proximate causation involves a determination that the nexus between the wrongful acts (or omissions) and the injury sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable.

E.J. Stewart, Inc. v. Aitken Products, Inc., 607 F. Supp. 883, 889 (E.D.Pa.1985) (citations omitted).

To prove proximate causation, a plaintiff must show that the defendant's breach was a substantial factor in bringing about the plaintiff's harm.  See Powell v. Drumheller, 653 A.2d 619, 622 (Pa. 1995).  Proximate causation "may rest on circumstantial evidence of such proximate causation." Turturro v. United States, 629 Fed. App'x (3d Cir. 2015) (citing Harvilla v. Delcamp, 555 A.2d 763, 764 (Pa. 1989)).

Although a causal chain of events may be severed by an intervening or superseding act, thus precluding proximate causation, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable." Simmons, 224 F. Supp. 3d at 419 (internal quotation marks and citations omitted).  In any event, "[b]ecause the issue of proximate cause is inherently fact-based, causation is generally a question of fact for the jury." Id. at 415 (citations omitted).  The issue will only be removed from the trier of fact "where it is clear that reasonable minds could not differ on the issue."  Id. (quoting Summers v. Certainteed Corp., 997 A.2d 1152, 1163 (Pa. 2010)

Here, Moving Defendants do not dispute but-for causation, but instead contend that Plaintiff cannot show proximate causation.  Put differently, Moving Defendants do not challenge the theory that, but for Mr. Heckart and Ms. Doe calling the police, Plaintiff would not have been arrested and injured.  Rather, Moving Defendants refute the idea that "Specifically, Moving Defendants propose that the causal chain was severed between the alleged negligent acts of Moving Defendants' agents and Plaintiffs' injuries by the actions of the police officers, because the officers' "alleged use of unprovoked excessive force is so extraordinary that it could not have been foreseeable" by either Ms. Doe or Mr. Heckart when they called the police.  (Doc. No. 15-1.)

At this stage, however, Plaintiff has pled facts to support proximate causation, and her claims of negligence and vicarious liability in Counts 11 and 12 against Moving Defendants will survive the Motion to Dismiss for this reason.  The Amended Complaint alleges that the agents of Moving Defendant, either or both Mr. Heckart and Ms. Doe, contacted the police and lied to them about Plaintiff's conduct. (Doc. No. 12 ¶ 53.)  Moreover, the alleged lie to the police was that Plaintiff was acting in a disorderly manner, by "banging on the emergency room doors and [] pushing through doctors."  (Id.)  As noted by Plaintiff, a jury may find that "it is

5

foreseeable that by lying to the police and causing them to come to the Hospital," Plaintiff would be arrested and possibly injured as the police were carrying out the arrest. (Doc. No. 16 at 10.)  Likewise, a jury could find that the recalcitrant behavior complained of is the type of behavior for which it is foreseeable that excessive force would be used.

Although the Court agrees with Moving Defendants that many arrests are executed without the use of force (see Doc. No. 17 at 4), "an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989).  Thus, there are sufficient facts from which reasonable minds can differ as to whether Plaintiff's injuries were foreseeable to Mr. Heckart and Ms. Doe.  While a jury may find that the police officers' alleged use of force "was so extraordinary" that it broke the causal chain to preclude proximate cause, such a finding by the Court at the pleadings stage would be inappropriate.  Therefore, the Court will deny Moving Defendants' Motion to Dismiss Counts 11 and 12.

Punitive Damages

Second, Moving Defendants seek to dismiss Plaintiff's request for punitive damages.  At the end of the Amended Complaint, the "wherefore clause" requests punitive damages as to all Defendants. (Doc. No. 12 ¶ 179.)  Hence, Moving Defendants argue that Plaintiff's request for punitive damages from them should be dismissed because Plaintiff did not allege facts to show willful, wanton, or reckless conduct. (Doc. No. 15-1 at 8.)  To counter this argument, Plaintiff proffers that, by alleging that Mr. Heckart and/or Ms. Doe intentionally lied to the police about Plaintiff's conduct, the alleged behavior of Moving Defendants' agents is sufficient to meet the standard for punitive damages at this stage. (Doc. No. 16 at 12.)

Punitive damages are appropriate "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005).  "[I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id. at 772.  For punitive damages, "[t]he state of mind of the actor is vital." Id. at 770–71.

Here, viewing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Amended Complaint alleges that Moving Defendants' agents intentionally lied when they called the police to come to Pottstown Hospital and described Plaintiff engaging in disruptive conduct, and that Plaintiff was arrested and injured as a result. (Doc. No. 12 ¶¶ 48–54.)  These allegations, if proven, may support a claim for punitive damages.  Although discovery may nevertheless reveal that punitive damages are not appropriate, dismissal of the punitive damages claim at the pleadings stage would be premature. See King v. Hyundai Motor Mfg. Am., No. 18-450, 2019 WL 458477, at *3 (M.D. Pa. Jan. 3, 2019), report and recommendation adopted, No. 18-450, 2019 WL 450217 (M.D. Pa. Feb. 5, 2019).

BY THE COURT:


  /s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

Therefore, the Court will also deny Moving Defendants' Motion to Dismiss Plaintiff's request for punitive damages.